GARMAN TURNER GORDON
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gtg.legal
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
Telephone 725-777-3000
*Attorneys for Kyle Entity Holdings, LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

| In re: | Case No.: BK-S-15-10116-abl |
|---|---|
| NW VALLEY HOLDINGS LLC, | Chapter: 11 |
| Debtor. | Confirmation Hearing:<br>Date: May 21, 2015<br>Time: 9:30 a.m. |

**OMNIBUS REPLY TO THE KB HOME AND KIMBALL HILL TRUSTS' OBJECTIONS TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION**

Kyle Entity Holdings, LLC ("KEH"), the only creditor holding an undisputed, liquidated, non-contingent claim against NW Valley Holdings LLC ("Debtor") and Debtor's managing member, hereby submits its reply (the "Reply") to the following objections to the confirmation of NW Valley Holdings, LLC's *Chapter 11 Plan of Reorganization* [ECF No. 51] (the "Plan"): (i) the *Limited Objection of KB Home to Debtor's Chapter 11 Plan of Reorganization* [ECF No. 61] (the "KB Home Objection") filed by KB Home, KB Home Nevada, Inc., and KB Home Kyle, Inc. (collectively, "KB Home"); and (ii) the *Objection to Confirmation of Debtor's Plan of Reorganization and Adequacy of Accompanying Disclosure Statement* [ECF No. 66] (the "KH Trusts Objection," and together with the KB Home Objection, the "Objections") filed by U.S. Bank, N.A. as the Plan Administer for the KHI Post-Consummation Trust and the Liquidating Trust Administrator for the KHI Liquidation Trust (collectively, the "Kimball Hill Trusts").[1]

This Reply, which requests that the Objections be overruled and the Plan be confirmed, is made and based on the following points and authorities, the declaration of Michael Stern filed in

---

[1] Through this Reply, KEH additionally joins in *Debtor's (I) Brief in Support of Confirmation of Chapter 11 Plan of Reorganization, and (II) Omnibus Reply to Objections to Confirmation* ("Debtor's Confirmation Brief").

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

1 of 10

support of the Reply (the "Stern Declaration"), the papers and pleadings on file in this matter, judicial notice of which is respectfully requested, and any arguments of counsel made at the Confirmation Hearing.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTORY STATEMENT

The unintended consequence of the KH Trust's Objection is that it proves the necessity of Debtor's Chapter 11 Case by highlighting its litigious history, contingent liabilities and decade of dispute that embody its legacy and the former Kyle Canyon project. From the outset of this case, KEH has been nothing but candid in disclosing its multiple roles as both the largest claimant and the largest equity holder. In fact, as KEH has advised this Court in its initial status conference, it was because of this dual role that KEH caused the Debtor to retain an independent manager and independent counsel to prosecute this Chapter 11 Case. A Debtor that leading up to Great-Rescission amassed one of the largest private housing developments in Nevada history through complex partnerships and transactions involving competing home builders and developers. And when the Nevada housing market evaporated, Debtor's history is littered with bankrupt members and litigation spanning from Nevada to New York.

Prior to the commencement of the Debtor's Chapter 11 Case, there was no clarity as to what claims parties may assert against Debtor, or their magnitude, or to whom the Debtor's assets may be distributed. Contrary to the assertions of the KH Trust, the most prudent and practical business decision (and litigation mitigation strategy) was to cause Debtor to seek sound and independent advice and bring its tortured history to a close. Ironic is the only way to describe the liquidating trust of a seven year old bankruptcy estate asserting an unliquidated contingent claim and then objecting to the propriety (without evidence) of this Debtor trying to reach finality.

…

…

---

[2] All capitalized, undefined terms herein shall have the same meaning as set forth in the Plan.

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

## II. LEGAL ANALYSIS

### A. KB Home and the Kimball Hill Trust's Standing to Object to Confirmation Is Tenuous.

KB Home, having sold its interests in Debtor to KEH,[3] is neither a creditor, equity security holder, nor other party-in-interest in Debtor's Chapter 11 Case and therefore lacks standing to file and prosecute its Objection.[4] On this basis alone, the KB Home Objection should be overruled.

While the Kimball Hill Trusts did file a proof of claim, claim number 1-1, on the May 13, 2015 bar date in order to facially establish standing to file the KH Trusts Objection, the Kimball Hill Trusts did not, and could not, assert a liquidated or non-contingent claim. Instead, even though the Kimball Hill bankruptcy was filed more than 7 years ago, can only assert that it holds a vague "unsecured contingent and unliquidated claims against the Debtor in this case for reimbursement, indemnification, contribution, and subrogation." See Claim No. 1-1, at p. 5. The Kimball Hill Trust's transparent efforts to "sandbag" Debtor and seek to derail confirmation of the Plan by waiting until the last possible moment to file a claim, which claim is then an unliquidated, contingent claim that is unenforceable under Section 502 of the Bankruptcy Code, cannot be sanctioned. The Objections should be overruled and the Plan confirmed.

…

---

[3] See KB Home Objection, p. 2, ll. 18-19.

[4] Although Section 1109(b) of the Bankruptcy Code authorizes a party-in-interest to appear and be heard on any issue in a Chapter 11 case, "a party claiming to be a party in interest must still satisfy the general requirements of the standing doctrine." Southern Boulevard, Inc. v. Martin Paint Stores (In re Martin Paint Stores), 207 B.R. 57, 61 (Bankr. S.D.N.Y. 1997) (citing In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir.1992); see also Collier on Bankruptcy ¶ 1109.03 (Lawrence P. King ed. (although the term party-in-interest is broadly interpreted, it is not indefinitely expansive). "The doctrine of standing 'embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, ... and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" In re Martin Paint Stores, 207 B.R. at 61 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984); see also In re Huggins, 460 B.R. 714 (Bankr. E.D. Tenn. 2011) (discussing that although a creditor of one of the debtor's creditor may have an interest in the outcome of the bankruptcy case and the settlement motion to which the claimant objected, such creditor of debtor's creditor did not have the requisite standing to object to the settlement motion); see also In re Refco, Inc., 505 F.3d 109, 118 (2nd Cir. 2007) (affirming the bankruptcy court's holding that the investors of the defendant named in an avoidance action that was the subject of the settlement agreement were not parties-in-interest within the meaning of Section 1109).

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

...

B. **KEH Holds Valid, Non-Contingent, Liquidated Claims Against Debtor, Which Are Properly Compromised Through the Plan.**

There is no dispute that KEH has acquired the Original Homebuilders'[5] indemnity and contribution claims and that such claims have been timely and properly asserted. Instead, the Kimball Hill Trusts (who were not a party to the 2011 Settlement Agreement) and KB Home take the inexplicable position that through the 2011 Settlement Agreement, the Original Homebuilders granted a release to Debtor despite the fact that Debtor was not a party or a signatory to the 2011 Settlement Agreement other than, as discussed below, Exhibit 3 thereto. Such contention is: (i) not supported by the plain language of the 2011 Settlement Agreement; (ii) in conflict with New York law, which is the governing law under the 2011 Settlement Agreement;[6] and (iii) illogical.

While acknowledging that the 2011 Settlement Agreement was solely between "Wachovia and the Lenders on the one side and the Original Homebuilders on the other,"[7] the Kimball Hill Trusts nonetheless ignore the terms of the actual mutual release provision contained in Section 4(b) and instead solely cite to the definition of "Released Claim" set forth in Section 4(a) of the Settlement Agreement to arrive at their incorrect conclusion that the 2011 Settlement Agreement released claims between the Original Homebuilders and Debtor. Specifically, Section 4(b) provides, in pertinent part, as follows:

> Upon receipt of each Home Builder's Settlement Payment described in paragraph 1 above, the ***Lender Releasors*** shall and hereby do release, acquit, and forever discharge the applicable ***Home Builder Releasees***[8] from and against any and all

---

[5] The term "Original Homebuilders" refers to the following homebuilders that has executed completion, limited, and repayment guarantees (collectively, the "Guarantees") in favor of Wachovia and the Lenders and entered into the 2011 Settlement Confidential Settlement Agreement with Wachovia and the Lenders: KB Home Nevada, Inc., KB Home, Lennar Communities Nevada, LLC and Lennar Corporation, Meritage Homes of Nevada, Inc., Meritage Homes Corporation, PN II, Inc., Pulte Group, Inc., Ryland Homes Nevada, LLC, The Ryland Group, Inc., Coleman-Toll Limited Partnership, Toll Brothers, Inc. The following additional homebuilders also executed the Guarantees, but were *not* parties to the 2011 Settlement Agreement: Focus Kyle Group, LLC ("Focus"), John A. Ritter ("Ritter"), Alameda Investments, LLC, Woodside Group, Inc., and Kimball Hill.

[6] See Simons Decl., Ex. A § 10(g).

[7] See KH Trusts Objection, p. 4, ll. 12-17.

[8] "Home Builder Releasees" and "Home Builder Releasors" are defined as "each Home Builder together with its respective current and former principals, officers, directors, managers, members, shareholders, employees, parent

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4 of 10

100260-001\KEH's NW Valley Holdings Reply v 3.doc

liability or potential liability which it now has, has had, or may have in the future, arising out of or relating to any Released Claims.

Simons Decl., Ex. A ¶ 4(b) (emphases added). Glaringly absent from the "Mutual Release" provision is any release between the Home Builders and Debtor (who is defined as "Kyle" in the 2011 Settlement Agreement). See id. at p. 1.[9]

Beyond asking this Court to ignore the operative "Mutual Release" provision contained in Section 4(b) and to instead craft an alternate release that includes Debtor based on the definitions set forth in Section 4(a), the Kimball Hill Trusts and KB Homes make the illogical leap that the dismissal of the Deficiency Action commenced by Wachovia against Debtor (not the Original Homebuilders) operates to effectuate a release of indemnity and contribution claims between the Original Homebuilders and Debtor. Specifically, as set forth in the 2011 Settlement Agreement, on December 15, 2008, Wachovia and the Lenders commenced the Deficiency Action against Debtor in the Eighth Judicial Court, Clark County, Nevada. See id., at p. 2. In furtherance of settling all claims that could result in liability by the Original Homebuilders to Wachovia and the Lenders, the 2011 Settlement Agreement provided for the dismissal with prejudice of the Deficiency Action after receipt of the settlement payments. See id. § 2. The only signature provided by Debtor in connection with the 2011 Settlement Agreement is on the *Stipulation and Order of Dismissal with Prejudice* attached as Exhibit C to the Settlement Agreement (the "Dismissal Order"). The Dismissal Order provides, in pertinent part, that Wachovia and Debtor "have agreed to settle and compromise all claims and counterclaims in the above-captioned action. Plaintiff [Wachovia] and Defendant [Debtor], therefore, stipulate to the

—————————————— (Continued)
companies, subsidiaries, affiliates, agents, attorneys, trustees, accountants, insurers, predecessors, successors, assigns and representatives of any kind, and all those who may have the right to claim against whom a Released Claim is brought based on the alleged liability of any of the foregoing." Id. § 4(a)(ii).

[9] "It is well settled that releases are contracts that, unless their language is ambiguous, must be interpreted to give effect to the intent of the parties as indicated by the language employed." Murray-Gardner Mgmt., Inc. v. Iroquois Gas Transmission Sys., L.P., 229 A.D.2d 852, 853-54, 646 N.Y.S.2d 418, 419 (1996). Further, under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Phillies Records, Inc., 780 N.E.2d 166, 170, 98 N.Y.2d 562, 569 (2002). This is because the best evidences of what the parties to the contract intended is what is written. See id. Here, where there is no written release of claims between the Original Homebuilders and Debtor in the 2011 Settlement Agreement, the Kimball Hill Trusts' efforts to now graft such a release into the "mutual release" provision of the Agreement must be rejected.

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

5 of 10

dismissal with prejudice of the above entitled case including without limitation, all matters, claims, causes of action and damages that were brought or that could have been brought by Plaintiff against Defendant in this action." Id. at Ex. C.

The fact that Debtor was a party to the Dismissal Stipulation, but not the Settlement Agreement itself further underscores that while Wachovia and the Lenders agreed to release their claims against Debtor through the dismissal of the Deficiency Action, the Original Homebuilders did not provide such a release to Debtor. Certainly, as a party to the Dismissal Order, Debtor was aware of the 2011 Settlement Agreement and represented by competent counsel, the law firm of Jones Vargas, in the preparation and effectuation of the Dismissal Order. Had the Original Homebuilders intended to provide a release to Debtor, Debtor would have been a party and signatory to the Settlement Agreement itself and would have been a named releasor and releasee, and not just a signatory and party to the Dismissal Order.

Ignoring the terms of the Dismissal Order and without undertaking any substantive analysis, both the Kimball Hill Trusts and KB Home cite to the Nevada Supreme Court decision in *Kyle Agent, LLC v. Kyle Acquisition Group, LLC*, 2013 WL 7156043, at *1 (Nev. Dec. 18, 2013) (the "LVVW Case") as supporting their contention that the 2011 Settlement Agreement released all claims against Debtor, including the indemnity and contribution claims held by the Original Homebuilders against Debtor.[10] Importantly, however, the LVVW Case was filed to determine whether Wachovia or Debtor was entitled to receive a $2,024,200 refund from the Las Vegas Water District and during the case, Debtor asserted that Wachovia had released its claims to the refund pursuant to the Dismissal Order. See Kyle Agent, LLC, 2130 WL 7156043 at *1. None of the Original Homebuilders were a party to the LVVW Case. See id. After considering the Dismissal Order and the 2011 Settlement Agreement, the Nevada Supreme Court affirmed the District Court's decision that "pursuant to the dismissal order and terms of the Agreement, Wachovia expressly released Kyle from all disputes and claims relating to Kyle and the project." Id. While this decision established that Wachovia and the Lenders had released their claims

---

[10] See KB Home Objection, p. 3; KH Trusts Objection, p. 5.

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

6 of 10

against Debtor (as expressly provided in the Dismissal Order), it did not consider, discuss, or determine whether the 2011 Settlement Agreement released the indemnity and contribution claims held by the Original Homebuilders against Debtor. Thus, the Kimball Hill Trusts and KB Home's contention that the LVVW Case establishes that the 2011 Settlement Agreement released the Original Homebuilders' indemnity and contribution claims against Debtor fails.

Beyond the legal and factual deficiencies in the Kimball Hill Trusts and KB Home's arguments, their contention simply flies in the face of logic. There is no logical or economic reason why the Original Homebuilders, who were paying millions of dollars to Wachovia and the Lenders as a result of Debtor's default, would then release their indemnity and contribution claims against Debtor when Debtor was not providing any benefit in return and was not even a signatory to the agreement.[11]

### C. KEH Has Distinct Indemnification and Contribution Claims that It Acquired From Focus and Ritter.

Equally baffling is Kimball Hill's suggestion that the 2011 Settlement Agreement somehow resulted in the release of Focus and Ritter's claims against Debtor, despite the fact that neither Focus nor Ritter were parties or signatories to the 2011 Settlement Agreement. See Simons Decl., Ex. A, p. 1. Specifically, the Kimball Hill Trusts contends that KEH does not have a valid claim as its claim was "unequivocally released through the Settlement Agreement in 2011." KH Trusts Objection, p. 16, ll. 21-23. This statement is, at best, misleading. The Kimball Hill Trusts, who filed the 2011 Settlement Agreement with the Court, are certainly aware that Focus and Ritter were not parties or signatories to such agreement. In fact, the 2011 Settlement Agreement expressly severs and preserves Wachovia and the Lenders' claims against Focus and Ritter. See Simons Decl., Ex. A, p. 4 ¶ 2. The Kimball Hill Trusts are likewise aware that KEH had acquired Focus and Ritter's indemnification and contribution claims against Debtor through a separate settlement agreement as such acquisition is discussed in the Disclosure

---

[11] In fact, one must question whether such a release would even be enforceable without any consideration being provided by Debtor to the Original Homebuilders. See In re Estate of Hennel, 40 Misc. 3d 547, 555, 967 N.Y.S.2d 625, 631 (Sur. 2013) (It is black letter law that in order for a contract to be binding and enforceable, there must be consideration. 22 N.Y. Jur. 2d, Contracts, § 11.).

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

7 of 10

Statement. See Disclosure Statement, ECF No. 45, p. 9. ll. 19-23. Thus, the Kimball Hill Trusts' contention that KEH's claim for indemnity and continuation was "unequivocally released through the Settlement Agreement in 2011" is wrong.

Moreover, a review of the settlement agreement between Kyle Agent, as successor to Wachovia, acting on behalf of the Lenders, and Ritter and Focus (the "<u>Ritter Settlement Agreement</u>") confirms that KEH holds valid, non-contingent, liquidated indemnification and contribution claims against Debtor.[12] Through the Ritter Settlement Agreement, Kyle Agent and the Lenders settled their claims against Focus and Ritter arising from the Guarantees in exchange for receiving certain confidential settlement payments and the transfer of Focus and Ritter's interests and rights in and against Debtor to KEH. See <u>id.</u> at Stern Decl. ¶ 4 (stating that Focus and Ritter's indemnification and contribution claims against Debtor were transferred to KEH); see also Disclosure Statement, at p. 9, ll. 19-23. While releases were granted in the Ritter Settlement Agreement, no releases were granted to Debtor. Section 5(b) entitled "Mutual Release" provides as follows:

> b. <u>Mutual Release.</u> Subject to the occurrence of the Effective Date and the deliveries and payments to be made on the Effective Date and thereafter pursuant to this Settlement Agreement, and subject to completion of the other promises, terms and conditions of this Settlement Agreement: (i) the ***Lender Releasor***[13] shall and does hereby release, acquit, and forever discharge the ***Focused Released Parties***[14] from and against any and all liability or potential liability which it now has, has had, or may have in the future, arising out of or relating to any Kyle Agent Released Claims and (ii) the ***Focus Releasors*** shall and hereby do release, acquit, and forever discharge the ***Lender Released Parties***[15] from and against any and all liability which it now has, had, or may have in the future, arising out of or relating to any ***Focused Released Claims.***

---

[12] Pursuant to the terms of the Ritter Settlement Agreement, such agreement has been filed under seal with the Court.

[13] The term "Lender Releasor" is defined as Kyle Agent, in its capacity as Administrative Agent under the Amended Credit Agreement." Id. § 5(a)(i).

[14] "Focus Release Parties" and "Focus Releasors" are defined as "Ritter, in his individual capacity and in his capacity as a member of Focus, each affiliate of Ritter, Focus, and each current and former principal, officers, directors, managers, members, shareholders, employees, parent company, subsidiary, affiliate, agents, attorney, trustee, accountant, insurer, predecessors, successor, assign, and representative of Focus." Id. § 5(a)(iii).

[15] "Lender Released Parties" is defined as "Kyle Agent, Kyle Agent's predecessors in interest, including, without limitation, Wachovia Bank, N.A. and Wells Fargo Bank, N.A., each of the Lenders, and each of their respective current and former principals, officers, directors, managers, members, shareholders, employees, parent companies, subsidiaries, affiliates, agents, attorneys, trustees, accountants, insurers, predecessors, successors, assigns, and representatives." Id. § 5(a)(ii).

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

8 of 10

Id. § 5(b).

Thus, as the Ritter Settlement Agreement resulted in the transfer of Focus and Ritter's rights of contribution and indemnity against Debtor to KEH and as Debtor was not granted a release (and was not even a party or signatory to the Ritter Settlement Agreement), it is indisputable that KEH holds a valid, non-contingent, liquidated claim for the amounts paid by Focus and Ritter to Kyle Agent and the Lenders pursuant to the Ritter Settlement Agreement.

D. **The Compromise of Claims Through a Plan Is Expressly Authorized By Section 1123(b).**

Section 1123(b)(3) of the Bankruptcy Code provides that "a plan may... (3) provide for — (A) the settlement or adjudication of any claim or interest belonging to the debtor or to the estate" and Bankruptcy Rule 9019(a) allows courts to approve compromises or settlements.[16] Given the clear authority under the Bankruptcy Code for settlements to be effectuated through a plan (and the preferred practice of obtaining consensual plans with creditors), it is perplexing that the Kimball Hill Trusts contend that the effectuation of the consensual resolution between KEH and Debtor, which resolution is only effectuated upon plan confirmation, is improper.

Irrespective of the lack of legal support for their position, the Kimball Hill Objection actually highlights the need for, and propriety of, the consensual resolution as litigation of any dispute regarding KEH's claim would be protracted and likely consume the balance of Debtor's assets. KEH purchased the Original Homebuilders, Focus, and Ritter's interests and claims, including the asserted indemnification and contribution claims, after the settlements were effectuated. As a result, KEH originally asserted a claim against Debtor for $28.4 Million arising from these indemnification and contribution claims, which claim KEH has compromised by nearly $4 Million, reducing its claim to $24.8 Million. See Disclosure Statement, at Exh. 3.

---

[16] The settlement does not have to be the best the debtor could have possibly obtained; rather, the settlement must only fall "within the reasonable range of litigation possibilities." In re Adelphia Commc'ns Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). In considering the factors, "a precise determination of likely outcomes is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim." In re Telesphere Commc'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted). Thus, rather than determining various issues of fact and law, the bankruptcy court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re Lion Capital Group, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

Debtor, on the other hand, has no operations and has assets consisting of less than $730,000, as well as the Real Property, which has recently been appraised by Debtor as having no value. See id. at Ex. 2. Additionally, as Debtor has estimated that it will have unpaid Administrative Claims of $198,000 on the Effective Date, Debtor is expected to have less $535,000 available to distribute to creditors. See id. at p. 3. Given this factual backdrop, it was prudent for Debtor and KEH to engage in settlement discussions rather than protracted and expensive litigation over the merits of KEH's claims, particularly where Debtor, through its independent manager, had undertaken an independent review and analysis of KEH's asserted claims.

Even were there to be some conceivable merit to the Kimball Hill Trust and KB Home's contentions regarding the alleged release provided by the 2011 Settlement Agreement, the portion of KEH's claims arising from its indemnification claims acquired from Ritter and Focus still exceed the assets available for distribution to Debtor's creditors, rendering any litigation a waste of judicial resources and serving no purpose other than enriching the attorneys litigating such claims. Thus, contrary to the Kimball Hill Trusts' contention, the settlement effectuated through Debtor's Plan is not an indication of impropriety, it demonstrates a prudent, expeditious, and relatively cost-effective resolution.

### III. Conclusion

Based on the foregoing analysis, as well as the analysis provided in Debtor's Confirmation Brief to which KEH has joined, KEH respectfully requests that the Court overrule the Objections, confirm the Plan, and grant such other and further relief as is just and proper.

GARMAN TURNER GORDON

GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
*Attorneys for Kyle Entity Holdings, LLC*

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\KEH's NW Valley Holdings Reply v 3.doc

10 of 10