| | |
|---|---|
| GARMAN TURNER GORDON | LARSON & ZIRZOW, LLC |
| GREGORY E. GARMAN, ESQ. | ZACHARIAH LARSON, ESQ. |
| Nevada Bar No. 6654 | Nevada Bar No. 7787 |
| E-mail: ggarman@gtg.legal | E-mail: zlarson@zlawnv.com |
| TALITHA GRAY KOZLOWSKI, ESQ. | MATHEW C. ZIRZOW, ESQ. |
| Nevada Bar No. 9040 | Nevada Bar No. 7222 |
| E-mail: tgray@gtg.legal | E-mail: mzirzow@lzlaw.com |
| 650 White Drive, Ste. 100 | 810 Casino Center Blvd. # 101 |
| Las Vegas, Nevada 89119 | Las Vegas, Nevada 89101 |
| Telephone: 725-777-3000 | Telephone: 702-382-1170 |
| *Attorneys for Kyle Entity Holdings, LLC* | *Attorneys for Debtor* |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

In re:

NW VALLEY HOLDINGS LLC,

　　　　Debtor.

Case No.: BK-S-15-10116-abl
Chapter:   11

**JOINT OBJECTION TO THE KHI TRUSTS' PROOF OF CLAIM, CLAIM NO. 1-1 AND, IN THE ALTERNATIVE, MOTION TO ESTIMATE THE CLAIM**

Kyle Entity Holdings, LLC ("KEH"), by and through its counsel, the law firm of Garman Turner Gordon, and NW Valley Holdings, LLC, debtor and debtor-in-possession ("Debtor," and together with KEH, the "Movants"), by and through its counsel, the law firm of Larson & Zirzow, LLC, hereby submit their motion (the "Motion") pursuant to Section 502 of title 11 of the U.S. Code (the "Bankruptcy Code") for the entry of an order: (i) disallowing proof of claim number 1-1 (the "KH POC") filed on the claims bar date by U.S. Bank, N.A., as the Plan Administrator for the KHI Post-Consummation Trust and the Liquidation Trust Administrator for the KHI Liquidation Trust (collectively, the "Kimball Hill Trusts"); or, in the alternative, (ii) estimating the KH POC for purposes of allowance and treatment under *Debtor's Plan of Reorganization* [ECF No. 203] (the "Plan").

This Motion is made and based on the following memorandum of points and authorities, the supporting declaration of Michael Stern (the "Stern Declaration") submitted herewith in support of the Motion, the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any argument of counsel made at the hearing on this Motion.

100260-001\Claim Objection and Motion for Estimation v 3~~1688296.doc~~

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTORY STATEMENT[1]

The Kimball Hill Trusts, in a transparent effort to delay confirmation of Debtor's Plan for its own purpose in its own seven-year old bankruptcy case, on the eve of confirmation, filed an unsecured, contingent, and unliquidated claim. Specifically, the KH POC states that the Kimball Hill Trusts "hold unsecured contingent and unliquidated claims against Debtor" allegedly owing as a result of "reimbursement, indemnification, contribution and subrogation…" KH POC, Ex. 1, at p. 3. However, it appears undisputed that even seven years after the filing of its own bankruptcy, the Kimball Hill Trust has never paid *any* amounts to creditors for which it can assert indemnification, reimbursement, contribution, or subrogation. Moreover, even if it had, as set forth herein, any such claim is disallowed by the Bankruptcy Code or as a matter of law.

## II. JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to, among other matters, 28 U.S.C. § 157(b)(2)(B), (b)(2)(L), and (b)(2)(O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Local Rule 9014.2, the Movants consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III. LEGAL ANALYSIS

**A.     The Kimball Hill Trusts Bear the Ultimate Burden of Proof.**

Section 502(a) provides that any proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502(b) and Bankruptcy Rule 3007 permit a

---

[1] The historical background of this case and the facts pertinent to this Objection have been cited at length in the Disclosure Statement, at pp. 6-16 [ECF No. 45], Debtor's Confirmation Brief [ECF No. 83], and KEH's reply to the objections to confirmation [ECF No. 82], which, in the interest of brevity, are incorporated herein by this reference. Capitalized, undefined terms shall have the meanings ascribed to them in the Plan and Disclosure Statement, in that order.

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

party in interest to object to a filed proof of claim. An objection to a proof of claim initiates a contested matter and requires that a hearing be held.

The Ninth Circuit Court of Appeals has described the shifting burdens of proof with respect to objections to proofs of claim as follows:

> Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is "deemed allowed," the burden of initially going forward with the evidence as to the validity and the amount of the claim is that of the objector to that claim. In short, the allegations of the proof of claim are taken as true. ***If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim.*** Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. ***But the ultimate burden of persuasion is always on the claimant.*** Thus, it may be said that the proof of claim is some evidence as to its validity and amount. It is strong enough to carry over a mere formal objection without more.

Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991) (quotations and citations omitted); see also Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1040 (9th Cir. 2000) (holding that the bankruptcy court correctly understood that the ultimate burden of persuasion was on the creditor); Spencer v. Pugh (In re Pugh), 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993) (holding claimant bears ultimate burden of persuasion as to validity and amount of the claim by a preponderance of the evidence). If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. See Lundell, 223 F.3d at 1039 (citations omitted).

In accordance with Section 502(b), the validity and amount of the claim shall be determined as of the date of the filing of the bankruptcy petition. Section 502(b)(1) requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . ." 11 U.S.C. § 502(b)(1). The "applicable law" referenced in Section 502(b)(1) includes bankruptcy law as well as other federal and state laws. A debtor is therefore allowed to raise any federal or state law defenses to a claim. See In re G.I. Indus., Inc., 204 F.3d 1276, 1281 (9th Cir. 2000) (stating that a claim cannot be allowed under Section

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

502(b)(1) if it is unenforceable under nonbankruptcy law); Johnson v. Righetti, 756 F.2d 738, 741 (9th Cir. 1985) (finding that the validity of the claim may be determined under state law); In re Eastview Estates II, 713 F.2d 443, 447 (9th Cir. 1983) (applying California law).

**B.     Disallowance of the KH POC Is Required by Sections 502(b), (c), and (e).**

While at first blush the KH POC may appear to have some substance due to its bulk, there is, in fact, no substance. A closer review reveals that the KH POC is woefully deficient failing to provide any legal or factual basis establishing (or even supporting) the validity of the Kimball Hill Trusts' asserted claims for contribution, indemnification, reimbursement, and subrogation. For instance, instead of identifying the legal basis for the asserted claims, the Kimball Hill Trusts merely refer to an inapplicable section of the NRS and other "applicable law." Similarly, while the Kimball Hill Trust do refer to "applicable agreements," including Debtor's operating agreement and articles of incorporation, there is no reference to what provisions therein the Kimball Hill Trusts contend even give rise to their asserted claims. And, even if the allegations set forth in the KH POC are taken as true, they fail to support a claim for contribution, indemnification, reimbursement, or subrogation. Given such defects, the KH POC fails to establish *prima facie* validity of the asserted claims. On this basis alone, the KH POC should be disallowed.

**1.    The Kimball Hill Trusts' asserted reimbursement, indemnification, and contribution claims "shall" be disallowed under Section 502(e).**

Section 502(e)(1) provides in pertinent part as follows:

The court ***shall disallow*** any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that —

(B) such claim for reimbursement or contribution is ***contingent as of the time of allowance or disallowance*** of such claim for reimbursement or contribution; or

(C) such entity *asserts* a right of subrogation to the rights of such creditor under section 509 of this title.

11 U.S.C. § 502(e)(1) (emphasis added).

. . .

. . .

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

First, as the Kimball Hill Trusts have asserted a right of subrogation (presumably under Section 509), their asserted contribution, indemnification,[2] and reimbursement claims "shall" be disallowed pursuant to Section 502(e)(1)(C). Addressing the situation where a claimant had asserted a subrogation claim that was disallowed and then sought to assert a contribution claim, the Nevada District Court held that the contribution claim was barred under Section 502(e)(1)(C). See Grantham v. Cory, 2012 WL 3206409, at *2 (D. Nev. Aug. 2, 2012). "'We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.' *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–54, (1992). Accordingly, courts have disallowed a claim for contribution under § 502 once the party has asserted a claim for subrogation under § 509." Id. (quoting In re Celotex Corp., 289 B.R. 460, 465 (Bankr.M.D.Fla.2003); accord Matter of Baldwin–United Corp., 55 B.R. 885, 895 (Bankr. S.D. Ohio 1985)).

Further expounding on its reasoning, the Nevada District Court explained that because the claimant had previously asserted a subrogation claim under Section 509, "[a] plain reading of the text of § 502(e)(1)(c) therefore prohibits [the claimant] from bringing a claim for contribution under § 502." Id. Consistent with the Grantham holding, if the Kimball Hill Trusts are asserting a right to subrogation under Section 509, then their asserted contribution and reimbursement claims must be disallowed in accordance with Section 502(e)(1)(C). Id. ("considerations of judicial economy strongly support requiring parties to select their theory of recovery once, rather than relitigating the same issue and facts under every theory Appellants can imagine").

Second, even if the Kimball Hill Trusts can establish that they are not asserting a subrogation claim under Section 502(e)(1)(C), their contribution, indemnity, and reimbursement claims "shall" be disallowed under Section 502(e)(1)(B). Section 502(e)(1)(B) was enacted "to prevent contingent, unresolved indemnification or contribution claims from delaying the consummation of a plan of reorganization or a final distribution in a liquidating case." In re

---

[2] It is well-established that that "the concept of reimbursement includes indemnity." In re Fuel Barons, Inc., 488 B.R. 783, 787 (Bankr. N.D. Ga. 2013) (quoting In re Alper Holdings USA, 2008 WL 4186333, at *5 (Bankr. S.D.N.Y. Sept. 10, 2008) quoting In re Wedtech Corp., 85 B.R. 285, 289 (Bankr.S.D.N.Y.1988)).

5 of 13
100260-001\Claim Objection and Motion for Estimation v 31688296.doc

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

GCO, LLC, 324 B.R. 459, 466-67 (Bankr. S.D.N.Y. 2005) (citing Syntex Corp. v. Charter Co. (In re Charter Co.), 862 F.2d 1500, 1502 (11th Cir. 1989).[3] Such delay is exactly what Kimball Hill is attempting to achieve with its baseless claim.

The Kimball Hill Trusts admit their claims are for reimbursement, indemnity, and contribution are "unsecured *continent* and unliquidated claims".[4] Based upon such obvious admissions, Kimball Hill's claims "shall" be disallowed under the Bankruptcy Code.

Equally as important as the statutory flaw underpinning their claims, let it not be lost on this Court that Kimball Hill has never paid any amounts to creditors upon which it seeks reimbursement, indemnity, and/or contribution from Debtor. Such unpaid contingent potential obligations are the purpose for which Section 502(e)(1)(C) was enacted. See In re APCO Liquidating Trust, 370 B.R. 625, 636 (Bankr. D. Del. 2007) (quoting In re Drexel Burnham Lambert Group, 148 B.R. 982, 985 (Bankr.S.D.N.Y.1992) ("[A] claimant's 'claim is contingent until their liability is established ... *and* the co-debtor has paid the creditor." (emphasis in original)).

**2.   The Kimball Hill Trusts' asserted reimbursement, contribution, and indemnification claims must be disallowed under Section 502(b)(1).**

In addition to disallowance under Section 502(e), the KH POC's asserted reimbursement, contribution, and indemnification claims must be disallowed because they are unenforceable under applicable law. See 11 U.S.C. § 502(b)(1). While the Kimball Hill Trusts assert contingent, unliquidated claims for reimbursement, indemnification, and contribution, they do not provide any substantive analysis of the legal or factual basis supporting such asserted claims. Instead, they vaguely state that the claims are asserted under "applicable law," including NRS

---

[3] "This statute epitomizes a considered Congressional policy that underlies the Bankruptcy Code as a whole, and Chapter 11 in particular: that is, the bankrupt's estate should not be burdened by estimated claims contingent in nature. Rather, the debtor should be expeditiously rehabilitated and reorganized, thereby providing the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible. *See, e.g., NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984); S.Rep. No. 989, 95th Cong., 2d Sess. 1, 9–12, 65, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5795–98, 5851; 3 Collier on Bankruptcy ¶ 502.05[1] (15th ed. 1979). Syntex and NEPACCO request, in effect, that we contravene this policy by allowing their claims which, on their face, are merely estimated and purely contingent. This we refuse to do." In re Charter Co., 862 F.2d 1500, 1502 (11th Cir. 1989).

[4] See KH POC, Ex. 1, p. 3 (emphasis added).

100260-001\Claim Objection and Motion for Estimation v 3~~1688296.doc~~

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

86.411 through 86.451, as well as "applicable agreements," including "the various agreements descried in the Nevada Claims as well the Debtor's Articles of Organization and its Operating Agreement dated as of January 10, 2005 as thereafter amended from time to time." KH POC, Ex. 1, p. 3.

While the KH POC generically refers to Debtor's "Operating Agreement" as providing a basis for its asserted unliquidated reimbursement, contribution, and indemnification claims, the Kimball Hill Trusts conveniently omit that such agreement was rejected in the Kimball Hill Cases, thereby precluding the Kimball Hill Trusts from asserting any claims arising from such agreement. Specifically, the First Amended Schedule of Assets and Liabilities for KHHN identifies Debtor's operating agreement and the amendments thereto as executory contracts. See ECF No. 488 in the Kimball Hill Cases.[5] The confirmed *Joint Plan of Kimball Hill, Inc. and Its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Code* then treats the executory contracts providing that all executory contracts that were not previously assumed or rejected and are not identified on the list of assumed executory contracts provided as Exhibit B, shall be rejected as of the plan's effective date or at the date set forth on Exhibit C to the plan. See Kimball Hill Plan, at Art. V.C. Debtor's operating agreement is not listed on either Exhibit B or C to the plan and was therefore rejected on the plan's effective date. See id. at Exs. B and C.

While this rejection was KHI's final breach of Debtor's operating agreement, as amended, it was not the first. Rather, not only was the commencement of the Kimball Hill Cases the first event of default under the Credit Agreement precluding Debtor from completing its development of the Project,[6] but the commencement of the Kimball Hill Cases was an enumerated "Event of Default" under Section 11.1.5 of the operating agreement itself. See Ex. 1 to the Stern Decl. To this end, the Kimball Hill Trusts are seeking to recover for monies they have never paid under an operating agreement that KHHN was the first to breach and that was ultimately rejected as being burdensome. Thus, even if the Kimball Hills Trust had paid any amounts to creditors upon which to base a claim (which they have not) such breach necessarily

---

[5] The pleadings in the Kimball Hill Cases are available at www.kccllc.net/kimballhill.

[6] See id.

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

alleviates Debtor of any reimbursement, indemnification, or contribution claims arising from Debtor's operating agreement.

Further, this Court cannot ignore the absurdity of the Kimball Hill Trusts' contention. The Nevada Claims assert, in part, unliquidated damages against KHHN as a result of its breach of Debtor's operating agreement, not Debtor's breach of the operating agreement. Yet, the Kimball Hill Trusts are, apparently, trying to contend that if they must tender payment on claims resulting from their own breach of Debtor's operating agreement, then, at that point, they can seek indemnification from Debtor. However, there is absolutely no factual or legal basis provided to explain how or why the Kimball Hill Trusts' breach of Debtor's operating agreement could ever result in a claim by the Kimball Hill Trusts against Debtor. Such argument is, at best, nonsensical and must be rejected.

The only statutory basis cited the Kimball Hill Trusts for the asserted reimbursement, indemnification, and contribution claims is NRS 86.411 through NRS 86.451, which provide as follows:

> **NRS 86.441  Indemnification of member or manager: Advancement of expenses.**  The articles of organization, the operating agreement or a separate agreement made by a limited-liability company may provide that the expenses of members and managers incurred in defending a civil or criminal action, suit or proceeding must be paid by the company as they are incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of an undertaking by or on behalf of the manager or member to repay the amount if it is ultimately determined by a court of competent jurisdiction that the member or manager is not entitled to be indemnified by the company. The provisions of this section do not affect any rights to advancement of expenses to which personnel of the company other than managers or members may be entitled under any contract or otherwise by law.
>
> **NRS 86.451  Indemnification of manager, member, employee or agent: Effect of provisions on other rights; continuation after cessation of status.**  Indemnification or advancement of expenses authorized in or ordered by a court pursuant to NRS 86.411 to 86.441, inclusive:
>
>   1. Does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under the articles of organization or any operating agreement, vote of members or disinterested managers, if any, or otherwise, for an action in the person's official capacity or an action in another capacity while holding office, except that indemnification, unless ordered by a court pursuant to NRS 86.421 or for the advancement of expenses made pursuant to NRS 86.441, may not be made to or on behalf of any member or manager if a final adjudication establishes that the member's or the manager's acts or omissions involved intentional misconduct, fraud or a knowing

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

8 of 13
100260-001\Claim Objection and Motion for Estimation v 3<s>1688296.doc</s>

violation of the law and was material to the cause of action.

2. Continues for a person who has ceased to be a member, manager, employee or agent and inures to the benefit of the heirs, executors and administrators of such a person.

Even a cursory review of these statutes reveals that they do not provide the Kimball Hill Trusts with a basis to assert a reimbursement, indemnification, or contribution claim against Debtor unless such right was provided in Debtor's operating agreement or governing documents. However, because KHHN breached Debtor's operating agreement, even if the operating agreement did provide a basis for reimbursement, indemnification, or contribution, Debtor is relieved from performance as a result of KHHN's breach.

Based on the foregoing, the Kimball Hill Trusts have failed to establish a right to reimbursement, indemnification, or contribution and as such, the KH POC should be disallowed pursuant to Section 502(b)(1).

### 3. The Kimball Hill Trusts' asserted subrogation claim fails as a matter of law.

Section 509 addresses subrogation claims, providing, in pertinent part, as follows:

> Except as provided in subsection (b) or (c) of this section, an entity that *is liable with the debtor on*, or that has asserted a claim of a creditor against the Debtor, and that *pays such claim*, is subrogated to the rights of such creditor *to the extent of such payment.*

11 U.S.C. § 509(a) (emphasis added).

Foremost, as the Kimball Hill Trusts have never paid a single dollar on the outstanding indebtedness under the Credit Agreement, the Kimball Hill Trusts cannot assert a subrogation claim. As the Nevada District Court has explained, "a co-debtor's right of subrogation arises *only* when and to the extent that the co-debtor pays the assured creditor. *See* 11 U.S.C. § 509(a). Thus, it is *only when actual payment* of all or *part of the claim* is made that the right to subrogation becomes available." See Saba & Grantham v. Cory (In re Flamingo 55, Inc.), 2006 WL 2432764 *7 (D. Nev. 2006) (citing In re Darosa, 318 B.R. 871, 878079 (B.A.P. 9th Cir. 2004) (italics in original, bold italics added)).[7] Thus, where the Kimball Hill Trusts have not

---

[7] "[S]ubrogation under section 509 requires actual payment of all or part of the claim. 'It is only in the latter case of actual payment by the codebtor that subrogation under section 509 is available.' 4 *Collier on Bankruptcy* ¶ 509.02[3]; *see also Cornmesser v. Swope (In re Cornmesser's, Inc.),* 264 B.R. 159, 162 (Bankr.W.D.Pa.2001) ("An

100260-001\Claim Objection and Motion for Estimation v 31688296.doc

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

tendered any payments to satisfy the indebtedness under the Creditor Agreement, the Kimball Hill Trusts cannot assert a subrogation claim against Debtor.[8]

Moreover, to the extent that the Kimball Hill Trusts contend that their asserted subordination claim arises from the Repayment Guaranty filed at ECF No. 68, such argument also fails. Section 6 of the Repayment Guaranty, which is titled "Subrogation," only grants a right of subrogation to KHI *after* KHI has paid its portion of its "Guaranteed Share" under the Credit Agreement. See ECF No. 68 § 6. Specifically, Section 6 provides, in pertinent part:

> Except as otherwise provided in this Section 6, the Guarantor *shall not* exercise any rights which it may acquire by way of subrogation, by any payment made under this Guaranty or otherwise, *until all* the Secured Obligations have been paid in full and the Facilities are no longer in effect. Upon tarnation of this Guaranty under the provisions of Section 2(c) hereof, Guarantor shall (subject to the terms and conditions set forth in this Section 6) be subrogated to (and shall succeed, subject to the terms set forth in this Section 6, to the beneficial interest in the Administrative Agent's Lien against the portion of the Project provided to be but not yet purchased by the member Guarantor under its Acquisition Agreement….

Id. (emphasis added).

Section 2(c) of the Repayment Guaranty provides that after a default under the Credit Agreement, the "Guarantor [Kimball Hill Homes Nevada, Inc. ("KHHN") and KHI] shall pay to the Administrative Agent all Guarantor's Payment Obligations" and upon such full payment, the Repayment Guaranty shall terminate.

Not only have KHHN and KHI not paid their Guarantor's Payment Obligations due under the Repayment Guaranty, but "all the Secured Obligations" as required by Section 6 have not "been paid in full." As a result, and pursuant to Section 6, the Kimball Hill Trusts "shall not exercise any rights which it may acquire by way of subrogation" and the Kimball Hill Trusts'

---

(Continued)
entity is subrogated to the rights of a creditor for purposes of § 509(a) *if and only if* (1) the entity is liable with the debtor; (2) on a claim of a creditor against the debtor; and (3) *the entity pays such claim.*") (emphasis added). The statute itself provides that an entity "that pays" a claim on which it is jointly liable with a debtor is subrogated "to the extent of such payment." 11 U.S.C. § 509(a). Since neither Appellee has made any payment, section 509 is simply inapplicable." In re Darosa, 318 B.R. 871, 878-79 (B.A.P. 9th Cir. 2004).

[8] To the extent that the Kimball Hill Trusts are asserting an equitable subrogation claim, such claim would also fail as an equitable subrogation claim similarly does not arise until there is an actual payment to the assured creditor. See Recontrust Co. v. Zhang, 317 P.3d 814, 817-18 (Nev. 2014); Rink v. State, 901 N.Y.S.2d 480, 482 (Ct. Cl. 2010) aff'd, 87 A.D.3d 1372, 929 N.Y.S.2d 903 (2011).

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\Claim Objection and Motion for Estimation v 31688296.doc

asserted subrogation claim must be disallowed.[9]

C. **Alternatively, the KH POC Should Be Estimated at $0 Pursuant to Section 502(c).**

Section 502(c) provides for the estimation of contingent or unliquidated claims:

(c) There shall be estimated for purposes of allowance under this section –

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the ammonization of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c).

The purpose of allowing for the estimation of claims is "to avoid undue delay in the administration of bankruptcy proceedings." Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 957 (2d Cir. 1993). As such, bankruptcy courts may estimate claims under Section 502(c)(1) in order: 1) "[t]o avoid the need to await the resolution of outside lawsuits to determine issues of liability or amounts owed by means of anticipating and estimating the likely outcome of these actions, and 2) . . . to promote a fair distribution to creditors through a realistic assessment of uncertain claims." O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 981 F.2d 1450, 1461 (5th Cir. 1993).

In addition, estimation of a claim under Section 502(c)(1) is appropriate if liquidation of a claim "will take too long and unduly delay the distribution of the estate's assets." In re N.Y. Med. Group, P.C., 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001). Moreover, Section 502(c) uses the word "shall" and, therefore, estimation is mandatory rather than permissive if the criteria of Section 502(c) are met. See, e.g., Int'l Bhd. of Teamsters v. IML Freight, Inc., 789 F.2d 1460, 1463 (10th Cir. 1986); In re Frontier Airlines, Inc., 137 B.R. 811, 814 (D. Colo. 1992); In re Lane, 68 B.R. 609, 611 (Banrk. D. Haw. 1986); In re The Nova Real Estate Inv., 23 B.R. 62, 65 (Bankr. E.D. Va. 1982).

. . .

---

[9] The Movants additionally submit that the Kimball Hill Trusts' subrogation claim fails under Section 509(b)(1)(C); however, provided the numerous other basis for denial of the subordination claim, in the interest of brevity, the Movants reserve their right for further briefing on this point should it become necessary.

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

It is not possible for courts to estimate the value of claims with absolute certainty; thus, estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim." Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir. 1982) (affirming the bankruptcy court's estimation of claims at a zero value where it seemed more probable than not that the claims would ultimately fail in another forum); see also In re Windsor Plumbing Supply Co., 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (advocating use of probabilities in estimation of claims). The principal consideration when estimating the value of a claim is "to promote a fair distribution to creditors through a realistic assessment of uncertain claims." O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 981 F.2d 1450, 1461 (5th Cir. 1993); see also In re Enron Corp., Case No. 01-16034, 2006 WL 544463, at *4 (Bankr. S.D.N.Y. Jan. 17, 2006) ("[T]he estimation of claims promotes the purpose of establishing the amount of claims that are to receive distributive shares").

To the extent that the Court is not prepared to disallow the KH POC without further proceedings, estimation is required under Section 502(c). Foremost, there is no dispute that Debtor cannot conclude its confirmation proceedings without either the adjudication of the KH POC or its estimation and therefore, a failure to estimate would certainly unduly delay the admonition of the estate. See In re Corey, 892 F.2d 829, 834 (9th Cir. 1989) ("Given the highly speculative nature of appellants' claims, the district court correctly found estimation to be appropriate. Otherwise, the confirmation of the Louis's plan would have been unduly delayed to the detriment of Corey and her real creditors.").

Furthermore, this Court cannot lose sight of the fact that the Nevada Claims, upon which the KH POC is premised, were all filed in 2008 and each of the Nevada Claims asserts its own unliquidated claim. And, despite the fact that *seven* years have passed since the Nevada Claims were filed in the Kimball Hill Cases, none of the Nevada Claim have been liquidated nor is there any certainty that they will be liquidated in the future. It is certainly conceivable, if not likely, that such liquidation may take years given that seven years have already lapsed without any meaningful action having been taken by the Kimball Hill Trusts to liquidate such claims. As such, Section 502(c) undeniably requires the estimation of the KH POC so that Debtor can

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

100260-001\Claim Objection and Motion for Estimation v 31688296.doc

conclude its confirmation proceeding, distribute its assets, and otherwise administer its case to conclusion.

This Court has broad discretion when estimating the value of the Kimball Hill Trusts' contingent and unliquidated claims. See In re Corey, 892 F.2d at 834 (9th Cir. 1989) (citing Addison v. Langston (In re Brints Cotton Mktg., Inc.), 737 F.2d 1338, 1341 (5th Cir.1984); Bittner v. Borne Chem. Co., 691 F.2d 134, 136 (3d Cir.1982)). As the Kimball Hill Trusts bear the burden of establishing their claim and have fallen woefully short of establishing any claim, the Movants submit that the KH POC should be estimated at $0.00. In addition to the foregoing analysis regarding the merits of the KH POC, the appropriateness of a zero valuation is perhaps best established by the fact that after seven years, the Kimball Hill Trusts have not liquidated any of the Nevada Claims nor, most importantly, tendered a single payment on account of such claim.

Therefore, the Movants submit that the KH POC, which served solely as a dilatory maneuver designed to stall confirmation of the Plan, should be expeditiously estimated at $0.00 so that Debtor can confirm its Plan, distribute its assets, and administer its case to conclusion.

### IV. Conclusion

Based on the foregoing analysis, the Movants seek entry of an order disallowing the KH POC in its entirety, or, in the alternative, estimating the KH POC at $0, and for such other and further relief as the Court deems just and proper.

Dated: May 20, 2015.

| GARMAN TURNER GORDON | LARSON & ZIRZOW, LLC |
|---|---|
| */s/ Gregory E. Garman* | */s/ Matthew C. Zirzow* |
| GREGORY E. GARMAN, ESQ. | ZACHARY LARSON, ESQ. |
| TALITHA GRAY KOZLOWSKI, ESQ. | MATTHEW C. ZIRZOW, ESQ. |
| 650 White Drive, Ste. 100 | 810 s. Casino Center Blvd. #101 |
| Las Vegas, Nevada 89119 | Las Vegas, Nevada 89101 |
| *Attorneys for Kyle Entity Holdings LLC* | *Attorneys for Debtor* |

GARMAN TURNER GORDON
Attorneys at Law
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

13 of 13
100260-001\Claim Objection and Motion for Estimation v 31688296.doc